# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **Case No. 1:21-cr-125 (BAH)** |
| v. | : | |
| | : | |
| BRIAN MCCREARY, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Brian McCreary to three months' home detention, thirty-six (36) months of probation, sixty (60) hours of community service, and $500 in restitution.

### I.      Introduction

The defendant, Brian McCreary, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than one million dollars' of property damage.

Brian McCreary pleaded guilty to one count of 18 U.S.C. § 1752(a)(1), Entering or Remaining in a Restricted Building or Grounds. As explained herein, a sentence of home detention is appropriate in this case because (1) the defendant was one of the first thirty individuals to enter the U.S. Capitol at the initial breach point after an exterior door had been kicked open by one of the first rioters to enter; (2) once inside the building the defendant followed a large crowd of rioters around the building, to include Jacob Chansley (the "QAnon Shaman"), and filmed on his phone

1

as other members of the group harassed and chased law enforcement officers inside the building; and (3) after being ordered to exit the building by law enforcement, the defendant again entered the building a short time later, this time through a separate exterior door that had also been kicked open by other rioters.  To be clear, in coming to this sentencing recommendation, the government has also taken into consideration the fact that the defendant entered into a plea agreement at the earliest possible time, was candid and forthright with the FBI during a voluntary interview and, most importantly, provided valuable information and video evidence to the FBI tip line of his own volition within twenty-four hours of his criminal acts.  While these factors do not excuse the defendant's actions on January 6th, the government believes they do merit consideration when fashioning an appropriate sentence.

Although the defendant did not engage in violence or property destruction during the riot, he was surrounded by it and continued to travel with those engaging in this actively.  Before entering the Capitol Building on January 6, he was present at times when other rioters were destroying property and harassing law enforcement officers, yet he remained undeterred.  Instead, McCreary joined a large group of rioters and filmed the group's exploits throughout the building.  Despite witnessing this behavior by other rioters, he continued deeper into the U.S. Capitol until finally a police officer explicitly directed him to leave, at approximately 2:30 p.m.  Although he complied and left the building, the defendant decided to re-enter the building a brief time later through another door that had been kicked open by rioters. It was only after hearing a gun shot near the Speaker's Lobby at approximately 2:45 p.m. that the defendant exited the building and did not return, spending approximately thirty (30) minutes inside the building total.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on

numbers to overwhelm law enforcement, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the defendant's participation in a riot that actually succeeded in halting the Congressional certification combined with the factors listed above, renders the government's requested sentence both necessary and appropriate in this case.

## II.     Factual and Procedural Background

### The January 6, 2021 Attack on the Capitol

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 32 (Statement of Offense), at 1-7. As this Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to the defendant's conduct and behavior on January 6.

### Brian McCreary's Role in the January 6, 2021 Attack on the Capitol

Brian McCreary traveled to Washington, D.C. from his home in Massachusetts to attend the "Stop the Steal" rally. After attending the rally, McCreary marched to the U.S. Capitol.  Shortly after arriving on U.S. Capitol grounds, McCreary used a crowd control fence like a ladder to climb onto a balustrade with a mob of rioters and used it to gain access to a courtyard on the Upper West Terrace.  Once there, he witnessed rioters kicking down doors and bashing windows with riot shields, flag poles, and their fists.  These two shattered windows and broken door on a corridor on the Senate side of the Capitol Building were the first breach points into the locked building where rioters entered at approximately 2:13 pm.  Approximately thirty seconds after the first rioter climbed through a shattered window and after having personally witnessed the destruction, McCreary was one of the first thirty individuals to enter, as depicted in Figure 1 below.



**Figure 1**
**U.S. Capitol Police CCTV Footage (Senate Wing Door Entrance)**

McCreary then filmed and walked with the crowd, passing a commissary where individuals shouted that they were entitled to take food items because they pay for them. As the mob roamed the hallways, they declared to United States Capitol Police ("USCP") Officers that the officers worked for them and sought directions to the location where the votes were being counted. As the yelling group came to a stairway leading up towards the Senate Chamber, they encountered USCP Officer Eugene Goodman, who ordered them to disperse. Outnumbered, the officer turned and fled up the stairwell leading the mob towards USCP reinforcements. McCreary filmed this entire confrontation and chase, as depicted in Figure 2 below, a still from Video #3, which was previously provided to the Court as part of the plea.[1]

---

[1] Although the video recordings taken by the defendant were previously submitted to the Court, the government will re-submit the videos via USAFX with appropriate exhibit markings for purposes of clarity of the record.



**Figure 2**

Despite witnessing all of this, McCreary continued to film another significant

confrontation at the main doorway to the Senate, as depicted in Figure 3 below.



**Figure 3**
*USA Today*[2]

---

[2] *See e.g.*, Dinah Voyles Pulver and Josh Salman, *"Capitol mob drew Trump Supporters of all stripes, from a fireman to a QAnon shaman"*, USA Today, Jan. 7, 2021, 7:34 p.m. EST  (available at

It is at this point that the group of rioters were confronted by a line of law enforcement officers attempting to keep the mob from further breaching the building, and more specifically, the Senate Chamber.

McCreary watched while rioters harassed and screamed at the line of officers, in an effort to gain entry into the Senate Chamber where the certification was supposed to be occurring. The defendant was subsequently confronted by law enforcement and asked if he was a member of the press and to provide identification. When McCreary informed law enforcement he was not a member of the press he was ordered to leave the building at approximately 2:30 p.m., which he did. However, a short time later McCreary re-entered the building, again through a door that had been kicked open by rioters. While inside the building the second time, McCreary observed rioters attempting to break the glass around the Speaker's Lobby doors and heard a gunshot fired from that location. At this point, approximately 2:45 p.m., McCreary exited the Capitol Building, returned to his car, and drove home to Massachusetts, returning at approximately 1:00 a.m. January 7th. In total, the defendant was inside the Capitol building for a total of approximately thirty (30) minutes.

In the early morning hours of January 7, 2021, after arriving home, the defendant logged onto the FBI's tip portal, provided his name, contact information, a brief summary of what he observed inside the Capitol, and multiple videos from inside the U.S. Capitol. After the FBI successfully identified the defendant, he agreed to a lengthy voluntary interview on January 26, 2021.

To start, the defendant acknowledged he was present at the U.S. Capitol on January 6th, 2021, entered the building with a large crowd of rioters, and identified himself in Figure 3, above.

---

https://www.usatoday.com/story/news/2021/01/07/capitol-mob-drew-trump-fans-qanon-shaman-fireman-jake-angeli-arrest/6585339002/, last visited January 4, 2022)

When describing what he observed outside the building, McCreary stated he saw people with bullhorns shouting and appearing to incite the crowd, so he climbed a metal barrier to get a better view.  Once McCreary reached the top of the metal barricade, he observed the person he described as the "QAnon Shaman" directing other individuals in the crowd.  McCreary then made his way closer to the building, where he acknowledged observing individuals with crowbars and police shields attempting to break doors and windows on the exterior of the U.S. Capitol building. McCreary stated that the violence he observed at this point "felt like Antifa."  McCreary then described entering the building with the large mob of rioters, and his observations inside the building.  Finally, McCreary stated that he understood going into the building "might not have been legal but [he] made a personal choice at that point."

Once McCreary returned home, he told a co-worker he "raided" the Capitol and sent that co-worker multiple videos he took from inside the building.  According to multiple witnesses, prior to the Capitol riot, McCreary expressed his belief that there was widespread voter fraud during the 2020 Presidential election, which McCreary also confirmed during his interview with the FBI.

*The Charges and Plea Agreement*

On February 3, 2021, Brian McCreary was charged by complaint with violating 18 U.S.C. §§ 1752(a)(1) and (a)(2), and 40 U.S.C. §§ 5104(e)(2)(D), (E), and (G). On February 4, 2021, he was arrested at his home in Massachusetts. On February 17, 2021, Brian McCreary was charged by five-count Indictment with 18 U.S.C. §§ 1512(c)(2), 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On October 14, 2021, he pleaded guilty to Count Two of the Indictment, charging him with a violation of 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted

Building or Grounds. By plea agreement, Brian McCreary agreed to pay $500 in restitution to the Department of the Treasury.

### III.    Statutory Penalties

The defendant now faces sentencing on a single count of 18 U.S.C. § 1752(a)(1). As noted by the plea agreement, the defendant faces up to one year of imprisonment and a fine of up to $100,000. The defendant must also pay restitution under the terms of his or her plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

### The Sentencing Guidelines and Guidelines Analysis

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* at 49. The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark" for sentencing. *Id.* at 49.

The government agrees with the Sentencing Guidelines calculation set forth in the PSR. According to the PSR, the U.S. Probation Office calculated McCreary's adjusted offense level under the Sentencing Guidelines as follows:

| | |
|---|---|
| Base Offense Level (U.S.S.G. §2B2.3(a)) | 4 |
| Specific Offense Characteristics (U.S.S.G. §2B2.3(b)(1)(A)) | 2 |
| Acceptance of Responsibility (USSG §3E1.1(a)) | -2 |
| Total Adjusted Offense Level | 4 |

*See* PSR at ¶¶ 23-32.

The U.S. Probation Office calculated McCreary's criminal history as a category I, which is not disputed. PSR at ¶ 69-70. Accordingly, the U.S. Probation Office calculated McCreary's total adjusted offense level, after acceptance, at 4, and his corresponding Guidelines imprisonment range at 0-6 months. PSR at ¶¶ 68. McCreary's plea agreement contains an agreed-upon Guideline's calculation that mirrors the U.S. Probation Office's calculation.  Moreover, the U.S. Probation office recommended a sentence of eighteen (18) months' probation and a fine of $500.

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita*, 551 U.S. at 349. As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise,'" and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108. Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101. As the Third Circuit has stressed:

> The Sentencing Guidelines are based on the United States Sentencing Commission's in-depth research into prior sentences, presentence investigations, probation and parole office statistics, and other data. U.S.S.G. §1A1.1, intro, comment 3. More importantly, the Guidelines reflect Congress's determination of potential punishments, as set forth in statutes, and Congress's on-going approval of Guidelines sentencing, through oversight of the Guidelines revision process. See 28 U.S.C. § 994(p) (providing for Congressional oversight of amendments to the Guidelines). Because the Guidelines reflect the collected wisdom of various institutions, they deserve careful consideration in each case. Because they have been produced at Congress's direction, they cannot be ignored.

*United States v. Goff*, 501 F.3d 250, 257 (3d Cir. 2005). "[W]here judge and Commission *both* determine that the Guidelines sentences is an appropriate sentence for the case at hand, that sentence likely reflects the § 3553(a) factors (including its 'not greater than necessary' requirement)," and that *significantly* increases the likelihood that the sentence is a reasonable one." *Rita*, 551 U.S. at 347 (emphasis in original). In other words, "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough*, 552 U.S. at 89.

Here, while the Court must balance all of the § 3553 factors to fashion a just and appropriate sentence, the Guidelines unquestionably provide the most helpful benchmark. As this Court knows, the government has charged a considerable number of persons with crimes based on the January 6 riot. This includes hundreds of felonies and misdemeanors that will be subjected to Guidelines analysis. In order to reflect Congress's will—the same Congress that served as a backdrop to this criminal incursion—the Guidelines will be a powerful driver of consistency and fairness moving forward.

## IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is also guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). Taken together, these factors suggest a sentence of home detention is appropriate.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021 is a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms; indeed, it was the one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events.

While each defendant should be sentenced based on their individual conduct, as we now discuss, this Court should note that each person who entered the Capitol on January 6 without authorization did so under the most extreme of circumstances. As they entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement officials and smelled chemical irritants in the air. No rioter was a mere tourist that day.

Additionally, while looking at the defendant's individual conduct, we must assess such conduct on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical factors, to include: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from law enforcement officials; and (9) whether the defendant demonstrated sincere remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each defendant on a spectrum as to their fair and just punishment.

To be clear, had the defendant personally engaged in violence or destruction, he or she would be facing additional charges and/or penalties associated with that conduct. The absence of violent or destructive acts on the part of the defendant is therefore not a mitigating factor in misdemeanor cases.

To start, McCreary acknowledged witnessing multiple destructive acts and defiance of law enforcement prior to entering the building.  As he approached the building, he was part of a large mob of rioters that surrounded officers near the barricade he climbed up.  McCreary subsequently entered the United States Capitol as part of the initial breach, through a door that he acknowledged was kicked open by rioters' moments before.  He then followed the group of rioters through the building and recorded as they harassed and attempted to intimidate officers who were attempting to prevent a further breach of the building.  McCreary, along with others, were instructed to leave the building.  While McCreary did exit the building at one point, he subsequently re-entered the building through a separate door that had also been kicked open by rioters, and only left the building after hearing gun shots near the Speaker's Lobby, having been inside the building for roughly thirty minutes total.  As seen in the videos previously provided to the Court, McCreary filmed much of this activity. To his credit, McCreary does not appear to encourage or cheer on any of the criminal activity he witnessed and filmed on January 6 and he contacted the FBI in the early morning hours of January 7 and provided a written description of his conduct and observations while also sending them several video clips.  McCreary followed this unsolicited contact up with a fulsome voluntary interview on January 26

### B.  The History and Characteristics of the Defendant

As set forth in the PSR, Brian McCreary has no prior criminal convictions. PSR ¶¶ 33-36. McCreary reported to the PSR writer that he is currently married and has one child with his wife.

The defendant has an Associate's degree and is currently employed. McCreary has been compliant with his conditions of pre-trial release.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[3] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The demands of general deterrence weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most

---

[3] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

compelling reason to impose a sentence of incarceration. For the violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70; *see United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37 ("As other judges on this court have recognized, democracy requires the cooperation of the citizenry. Protesting in the Capitol, in a manner that delays the certification of the election, throws our entire system of government into disarray, and it undermines the stability of our society. Future would-be rioters must be deterred.") (statement of Judge Nichols at sentencing).

The gravity of these offenses demands deterrence. This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters— especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

14

*Specific Deterrence*

Brian McCreary's actions on January 6th, specifically being among the first wave of rioters to enter the Capitol, recording the mob he was a part of as others harassed, chased and shouted at law enforcement officers, and then subsequently re-entering the building after being ordered out, all demonstrate the need for specific deterrence in this case.  This is buttressed by McCreary's statements to others and his interview with the FBI where he made clear that he was present in D.C. on January 6th based on his belief that the 2020 Presidential Election was subject to wide-spread voter fraud.

During the plea hearing McCreary expressed some level of remorse. However, when interviewed by the FBI at the time of his arrest, he asserted that entering the building "might not have been legal but he made a personal choice at that point." All of these factors underscore the need for specific deterrence in this case.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on law enforcement officers, to conspiracy to corruptly interfere with Congress.[4] Each offender must be sentenced based on their individual circumstances, but with the backdrop of the January 6 riot in mind. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lower end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021 were not minor crimes. A

---

[4] Attached to this supplemental sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants.  That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

probationary sentence should not necessarily become the default.[5] Indeed, the government invites the Court to join Judge Lamberth's admonition that "I don't want to create the impression that probation is the automatic outcome here because it's not going to be." *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19; *see also United States v. Valerie Ehrke*, 1:21-cr-00097 (PFF), Tr. 9/17/2021 at 13 ("Judge Lamberth said something to the effect . . . 'I don't want to create the impression that probation is the automatic outcome here, because it's not going to be.' And I agree with that. Judge Hogan said something similar.") (statement of Judge Friedman).

The government and the sentencing courts have already begun to make meaningful distinctions between offenders. Those who engaged in felonious conduct are generally more dangerous, and thus, treated more severely in terms of their conduct and subsequent punishment. Those who trespassed, but engaged in aggravating factors, merit serious consideration of institutional incarceration. Those who trespassed, but engaged in less serious aggravating factors, deserve a sentence more in line with minor incarceration or home detention. The defendant has pleaded guilty to Count Two of the Indictment, charging him with Entering and Remaining in a Restricted Building or Grounds, a violation of 18 U.S.C. § 1752(a)(1). This offense is a Class A misdemeanor. 18 U.S.C. § 3559.

---

[5] Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation, including in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); and *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

For one thing, although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences—such as how a defendant entered the Capitol, how long he remained inside, the nature of any statements he made (on social media or otherwise), whether he destroyed evidence of his participation in the breach, etc.—help explain the differing recommendations and sentences.   And as that discussion illustrates, avoiding unwarranted disparities requires the courts to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement.   *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the government).

Moreover, assessing disparities, and whether they are unwarranted, requires a sufficient pool of comparators. In considering disparity, a judge cannot "consider all of the sentences not yet imposed." *United States v. Godines*, 433 F.3d 68, 69–71 (D.C. Cir. 2006). "The most a judge can do is consider those other sentences that do exist," and "[t]he comparable sentences will be much smaller in the early days of any sentencing regime than in the later." *Id*.; *see generally United States v. Accardi*, 669 F.3d 340, 346 (D.C. Cir. 2012) ("Without more, two allegedly similar cases constitute too small a sample size to support a finding of an 'unwarranted disparity' in sentences."). In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").

In Guidelines cases, sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity. *E.g., United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir.

2016); *United States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007). The Capitol breach was *sui generis*: a mass crime with significant distinguishing features, including the historic assault on the seat of legislative branch of federal government, the vast size of the mob, the goal of impeding if not preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against law enforcement officials, and large number of victims. Thus, even though many of the defendants were not charged as conspirators or as codefendants, the sentences handed down for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

As the number of sentences in the Capitol breach misdemeanor cases increase and the pool of comparators grows, the effect on sentences of obviously aggravating considerations should become more apparent. The same is true for obviously mitigating factors, such as a defendant's efforts to prevent assaults on police.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the Court may also consider the sentence imposed on Glenn Croy (21-cr-162(BAH)), where the defendant pleaded guilty to one count of 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating and Picketing in a Capitol Building or Grounds). In Croy, the defendant entered the Capitol building after witnessing law enforcement attempt to keep rioters at bay for over an hour, supported violent, aggressive, and antagonistic actions against law enforcement through his presence in a mob overwhelming law enforcement, entered the U.S. Capitol a *second* time, and later bragged about and defended his actions to friends. As stated above, these actions are similar to those of McCreary, with the notable exception that McCreary voluntarily provided information to the FBI the day after the riots, including multiple videos from inside the building. In Croy the government requested sixty (60) days incarceration and $500 in restitution, and this

Court sentenced him to ninety (90) days home detention, fourteen (14) days incarceration in a community correctional facility, thirty-six (36) months probation, and $500 restitution.

The Court may also consider the sentence imposed on Andrew Ryan Bennett (21-cr-227 (JEB)) for reference. In Bennett, the defendant promoted conspiracy theories concerning the 2020 Presidential Election, recorded violence and destruction of property with his phone, entered the building shortly after the initial breach, and followed a large group of rioters throughout several portions of the building. Like McCreary, there is no evidence Bennett was violent or destructive on the grounds of or inside the Capitol. Bennett pleaded guilty to one count of 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating and Picketing in a Capitol Building or Grounds). The government requested three (3) months home detention, thirty-six (36) months' probation, sixty (60) hours of community service and $500 in restitution.  The court sentenced Bennett to three (3) months home detention, twenty-four (24) months' probation, eighty (80) hours community service and $500 in restitution.

Additionally, the Court may also consider the sentence imposed on Eliel Rosa (21-cr-68 (TNM)) for reference.  In Rosa, the defendant traveled to the District from out of state and entered the U.S. Capitol, where he remained inside the building for approximately twenty (20) minutes. Before entering the building Rosa smelled pepper spray and was aware of clashes between rioters and law enforcement.  Moreover, various social media posts attributed to the defendant made clear his intentions on January 6; to stop the certification of the electoral college vote. Finally, like the instant case, Rosa also voluntarily contacted the FBI on January 9th, just three days after the attack on the Capitol, to admit that he was one of the individuals who entered the building.  Notably, Rosa was not among the first rioters to enter the Capitol building and did not re-enter after being ordered to leave. Rosa pleaded guilty to one count of 40 U.S.C. § 5104(e)(2)(G) (Parading,

Demonstrating and Picketing in a Capitol Building or Grounds).  In Rosa the government requested 1 month of home detention, thirty-six (36) months' probation, 60 hours of community service, and $500 restitution.  The Court sentenced the defendant to 12 months' probation, 60 hours of community service, and $500 in restitution.

Finally, the Court may also consider the sentence imposed on Robert Reeder (21-cr-166 (TFH)) for reference. In Reeder, the defendant *twice* breached the Capitol building for roughly a half hour, was tear-gassed and shot with pepper spray, and recorded a video bragging about his riotous conduct.  Like McCreary, Reeder did not personally engage in violence or property destruction but was part of a mob of rioters that contributed to the mayhem and destruction of January 6th.  The similarities in this case, and the instant case, are numerous.  Both defendants entered the Capitol building on two separate occasions, witnessed law enforcement making every effort to stem the tide of rioters breaching the building, and were part of a mob of rioters that contributed greatly to the chaos that occurred that day.  One notable distinction is, of course, that McCreary voluntarily provided information to the FBI and was cooperative throughout the duration of the investigation.  In Reeder, the government originally requested a sentence of two (2) months incarceration and $500 restitution.[6] The defendant was ultimately sentenced to three (3) months incarceration and $500 restitution.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize

---

[6] The government ultimately requested a sentence of six (6) months incarceration after new evidence revealed Reeder participated in assaultive behavior towards law enforcement pursuant to 18 U.S.C. § 111(a)

and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095.

## V.      Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. As explained herein, some of those factors support a sentence of incarceration and some support a more lenient sentence. Balancing these factors, the government recommends that this Court sentence Brian McCreary to three months' home confinement with thirty-six (36) month's probation, sixty (60) hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his early acceptance of responsibility.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:      */s/*_____
BRANDON K. REGAN
Assistant United States Attorney
MD Attorney No. 1312190043
555 Fourth Street, N.W.
Washington, DC 20530
Brandon.regan@usdoj.gov
(202) 252-7759

21

Table 1: Cases in which the government recommended a probation sentence without home detention[1]

| Defendant Name | Case Number | Offense of Conviction | Government Recommendation | Sentence Imposed |
|---|---|---|---|---|
| Morgan-Lloyd, Anna | 1:21-CR-00164-RCL | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 40 hours community service, $500 restitution | 36 months' probation, 120 community service hours, $500 restitution |
| Ehrke, Valerie | 1:21-CR-00097-PLF | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 40 hours community service, $500 restitution | 36 months' probation, $500 restitution |
| Bissey, Donna | 1:21-CR-00165-TSC | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 40 hours community service, $500 restitution | 14 days incarceration, 60 hours community service, $500 restitution |
| Hiles, Jacob | 1:21-CR-00155-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 60 hours community service, $500 restitution | 24 months' probation, 60 hours community service, $500 restitution |
| Wangler, Douglas | 1:21-CR-00365-DLF | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 40 hours community service, $500 restitution | 24 months' probation, 60 hours of community service, $500 restitution |
| Harrison, Bruce | 1:21-CR-00365-DLF | 40 U.S.C. § 5104(e)(2)(G) | 48 months' probation, 40 hours community service, $500 restitution | 24 months' probation, 60 hours of community service, $500 restitution |

Table 2: Cases in which the government recommended a probation sentence with home detention

| Defendant Name | Case Number | Offense of Conviction | Government Recommendation | Sentence Imposed |
|---|---|---|---|---|
| | | | | |

---

[1] Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC), *United States v. Douglas K. Wangler*, 1:21-cr-00365(DLF), and *United States v. Bruce J. Harrison*, 1:21-cr-00365(DLF). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

| Bustle, Jessica | 1:21-CR-00238-TFH | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 40 hours community service, $500 restitution | 2 months of home detention, 24 months' probation, 40 hours community service, $500 restitution |
|---|---|---|---|---|
| Bustle, Joshua | 1:21-CR-00238-TFH | 40 U.S.C. § 5104(e)(2)(G) | 1 month home detention, 36 months' probation, 40 hours community service, $500 restitution | 1 month home detention, 24 months' probation, 40 hours community service, $500 restitution |
| Doyle, Danielle | 1:21-CR-00324-TNM | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 probation | 2 months' probation, $3,000 fine, $500 restitution |
| Bennett, Andrew | 1:21-CR-00227-JEB | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 3 months of home detention, 24 months' probation, 80 hours community service, $500 restitution |
| Mazzocco, Matthew | 1:21-CR-00054-TSC | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 45 days incarceration, 60 hours community service[2], $500 restitution |
| Rosa, Eliel | 1:21-CR-00068-TNM | 40 U.S.C. § 5104(e)(2)(G) | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution | 12 months' probation, 100 hours community service, $500 restitution |
| Gallagher, Thomas | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 1 month home detention, 36 months' probation, 60 hours community service, a fine, and $500 restitution | 24 months' probation, 60 hours community service, $500 restitution |
| Vinson, Thomas | 1:21-CR-00355-RBW | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 3 years' probation, 60 hours community service, $500 restitution | 5 years' probation, $5,000 fine, $500 restitution, 120 hours community service |

[2] The government believes the Court's 10/4/2021 minute entry in this case is incorrect and the sentence requires 60 *hours* of community service, not 60 *months*.

| Dillon, Brittiany | 1:21-CR-00360-DLF | 40 U.S.C. § 5104(e)(2)(D) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 2 months home detention, 3 years' probation, $500 restitution |
|---|---|---|---|---|
| Sanders, Jonathan | 1:21-CR-00384-CJN | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 36 months' probation, 60 hours community service, $500 restitution |
| Fitchett, Cindy | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution |
| Sweet, Douglas | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution |
| Cordon, Sean | 1:21-CR-00269-TNM | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 2 months' probation, $4000 fine |
| Wilkerson, John IV | 1:21-CR-00302-CRC | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 36 months' probation, $2500 fine, 60 hours community service, $500 restitution |
| Jones, Caleb | 1:21-CR-00321-JEB | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 2 months home detention, 24 months' probation, $500 restitution, 100 hours community service |
| Brown, Terry | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 45 days home detention, 36 months' probation, 60 hours community service, $500 restitution | 1 month home detention, 36 months' probation, $500 restitution, 60 hours community service |
| Wrigley, Andrew | 1:21-CR-00042-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 18 months' probation, $2000 fine, $500 restitution, 60 hours community service |

| Parks, Jennifer | 1:21-CR-00363-CJN | 40 U.S.C. § 5104(e)(2)(G) | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution | 24 months' probation, $500 restitution, 60 hours community service |
|---|---|---|---|---|
| Reimler, Nicholas | 1:21-CR-00239-RDM | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution |
| Miller, Brandon | 1:21-CR-00266-TSC | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 20 days incarceration, 60 hours community service, $500 restitution |
| Miller, Stephanie | 1:21-CR-00266-TSC | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 14 days incarceration, 60 hours community service, $500 restitution |
| Hatley, Andrew | 1:21-CR-00098-TFH | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 36 months' probation, $500 restitution |
| Pert, Rachael | 1:21-CR-00139-TNM | 18 U.S.C. § 1752(a)(1) | 3 months home detention, 24 months' probation, 40 hours community service, $500 restitution | 24 months' probation, 100 hours community service, $500 restitution |
| Winn, Dana | 1:21-CR-00139-TNM | 18 U.S.C. § 1752(a)(1) | 3 months home detention, 24 months' probation, 40 hours community service, $500 restitution | 10 days incarceration (weekends), 12 months' probation, 100 hours community service, $500 restitution |
| Wickersham, Gary | 1:21-CR-0606-RCL | 40 U.S.C. § 5104(e)(2)(G) | 4 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 3 months home detention, 36 months' probation, $2000 fine, $500 restitution |

Table 3: Cases in which the government recommended a sentence of incarceration

| Defendant Name | Case Number | Offense of Conviction | Government Recommendation | Sentence Imposed |
|---|---|---|---|---|
| Curzio, Michael | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | Not applicable | 6 months incarceration (time served), $500 restitution |
| Hodgkins, Paul | 1:21-CR-00188-RDM | 18 U.S.C. § 1512(c)(2) | 18 months incarceration | 8 months incarceration, 24 months' supervised release, $2000 restitution |
| Dresch, Karl | 1:21-CR-00071-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 6 months incarceration (time served), $500 restitution | 6 months incarceration (time served), $500 restitution |
| Jancart, Derek | 1:21-CR-00148-JEB | 40 U.S.C. § 5104(e)(2)(D) | 4 months incarceration, $500 restitution | 45 days incarceration, $500 restitution |
| Rau, Erik | 1:21-CR-00467-JEB | 40 U.S.C. § 5104(e)(2)(D) | 4 months incarceration, $500 restitution | 45 days incarceration, $500 restitution |
| Hemenway, Edward | 1:21-CR-00049-TSC | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 45 days incarceration, 60 hours community service, $500 restitution |
| Reeder, Robert | 1:21-CR-00166-TFH | 40 U.S.C. § 5104(e)(2)(G) | 6 months incarceration, $500 restitution | 3 months incarceration, $500 restitution |
| Bauer, Robert | 1:21-CR-00049-TSC | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 45 days incarceration, 60 hours community service, $500 restitution |
| Vinson, Lori | 1:21-CR-00355-RBW | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 5 years' probation, $5,000 fine, $500 restitution, 120 hours community service |
| Griffith, Jack | 1:21-CR-00204-BAH | 40 U.S.C. § 5104(e)(2)(G) | 3 months incarceration, $500 restitution | 90 days home detention, 36 months' probation, $500 restitution |
| Torrens, Eric | 1:21-CR-00204-BAH | 40 U.S.C. § 5104(e)(2)(G) | 2 weeks incarceration, $500 restitution | 90 days home detention, 36 months' probation, $500 restitution |
| Gruppo, Leonard | 1:21-CR-00391-BAH | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 90 days home detention, 24 months' probation, $3,000 fine, $500 restitution |
| Ryan, Jenna | 1:21-CR-00050-CRC | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 60 days incarceration, $1000 fine, $500 restitution |
| Croy, Glenn | 1:21-CR-00162-BAH | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 90 days home detention, 14 days community correctional facility, 36 months' probation, $500 restitution |

| Stotts, Jordan | 1:21-CR-00272-TJK | 40 U.S.C. § 5104(e)(2)(G) | 45 days incarceration, $500 restitution | 60 days home detention, 24 months' probation, $500 restitution, 60 hours community service |
|---|---|---|---|---|
| Fairlamb, Scott | 1:21-CR-00120-RCL | 18 U.S.C. § 1512(c)(2), 18 U.S.C. § 111(a)(1) | 44 months incarceration, 36 months' supervised release, $2000 fine | 41 months incarceration, 36 months supervised release, $2000 restitution |
| Camper, John | 1:21-CR-00325-CKK | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 60 days incarceration, $500 restitution, 60 hours community service |
| Rukstales, Bradley | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 45 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |
| Cordon, Kevin | 1:21-CR-00277-TNM | 18 U.S.C. § 1752(a)(1) | 30 days incarceration, 12 months supervised release, $500 restitution | 12 months' probation, 100 hours community service, $4000 fine, $500 restitution |
| Chansley, Jacob | 1:21-CR-00003-RCL | 18 U.S.C. § 1512(c)(2) | 51 months incarceration, 36 months supervised release, $2000 restitution | 41 months incarceration, 36 months supervised release, $2000 restitution |
| Mish, David | 1:21-CR-00112-CJN | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |
| Lolos, John | 1:21-CR-00243-APM | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 14 days incarceration, $500 restitution |
| Scavo, Frank | 1:21-CR-00254-RCL | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, $500 restitution | 60 days incarceration, $5000 fine, $500 restitution |
| Abual-Ragheb, Rasha | 1:21-CR-00043-CJN | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 60 days home detention, 36 months' probation, 60 hours community service, $500 restitution |
| Peterson, Russell | 1:21-CR-00309-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |
| Simon, Mark | 1:21-CR-00067-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 45 days incarceration, $500 restitution | 35 days incarceration, $500 restitution |
| Ericson, Andrew | 1:21-CR-00506-TNM | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 20 days incarceration (consecutive weekends), 24 months' probation, $500 restitution |
| Pham, Tam Dinh | 1:21-CR-00109-TJK | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 45 days incarceration, $1000 fine, $500 restitution |

6

| Nelson, Brandon | 1:21-CR-00344-JDB | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, $500 restitution | 24 months' probation, $2500 fine, $500 restitution, 50 hours community service |
|---|---|---|---|---|
| Markofski, Abram | 1:21-CR-00344-JDB | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, $500 restitution | 24 months' probation, $1000 fine, $500 restitution, 50 hours community service |
| Marquez, Felipe | 1:21-CR-00136-RC | 18 U.S.C. § 1752(a)(2) | 4 months incarceration, 1 year supervised release, $500 restitution | 3 months home detention, 18 months' probation, $500 restitution |
| Meredith, Cleveland | 1:21-CR-00159-ABJ | 18 U.S.C. § 875(c) | Midrange of 37-46 months incarceration | 28 months incarceration, 36 months supervised release |
| Sorvisto, Jeremy | 1:21-CR-00320-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |
| Mariotto, Anthony | 1:21-CR-00094-RBW | 40 U.S.C. § 5104(e)(2)(G) | 4 months incarceration, 36 months' probation, $500 restitution | 36 months' probation, 250 hours community service, $5000 fine, $500 |
| Courtright, Gracyn | 1:21-CR-00072-CRC | 18 U.S.C. 1752(a)(1) | 6 months incarceration, 12 months' supervised release, 60 hours community service, $500 restitution | 1 month incarceration, 12 months' supervised release, 60 hours community service, $500 restitution |
| Palmer, Robert | 1:21-CR-00328-TSC | 18 U.S.C. § 111(a) and (b) | 63 months incarceration, 36 months supervised release, $2000 restitution | 63 months incarceration, 36 months supervised release, $2000 restitution, |
| Thompson, Devlin | 1:21-CR-00461-RCL | 18 U.S.C. § 111(a) and (b) | 48 months incarceration, 36 months supervised release, $2000 restitution | 46 months incarceration, 36 months supervised release, $2000 restitution |
| Edwards, Gary | 1:21-CR-00366-JEB | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, 24 months' probation, $500 restitution | 12 months' probation, $2500 fine, 200 hours of community service, $500 restitution |
| Tutrow, Israel | 1:21-CR-00310-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 2 months home detention, 36 months' probation, $500 restitution |